**ROWLAND v. UNITED STATES.**

**No. 13800.**

United States Court of Appeals
Ninth Circuit.

Oct. 16, 1953.

J. B. Tietz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Chief of Criminal Division, Manuel L. Real, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

On October 15, 1952, appellant, Robert Donald Rowland, was indicted for violating § 12(a) of the Universal Military Training and Service Act,[1] 50 U.S.C.A.

1. Also called the Selective Service Act of 1948.

Appendix, § 462(a).[2] The indictment alleged:

"[Appellant], a male person within the class made subject to selective service under the Selective Service Act of 1948,[3] registered as required by said act and the regulations promulgated thereunder and thereafter became a registrant of Local Board No. 113, said board being then and there duly created and acting, under the Selective Service System established by said act, in Los Angeles County, in the Central Division of the Southern District of California; pursuant to said act and the regulations promulgated thereunder, [appellant] was classified in Class I-A-O and was notified of said classification and a notice and order by said board was duly given to him to report for induction into the armed forces of the United States of America on July 28, 1952, in Los Angeles County, California; and at said time and place [appellant] did knowingly fail and neglect to perform a duty required of him under said act and the regulations promulgated thereunder in that he then and there knowingly failed and refused to be inducted into the armed forces of the United States as so notified and ordered to do."

Appellant was arraigned, pleaded not guilty and filed a motion to dismiss the indictment. That motion was denied. Thereafter appellant waived jury trial and was tried without a jury. At the close of the evidence offered by appellee, the United States, appellant moved for a judgment of acquittal. That motion was denied. Thereafter appellant offered evidence and, at the close of all the evidence, again moved for a judgment of acquittal. That motion was denied. Thereafter appellant was found guilty, and a judgment was entered sentencing him to be imprisoned for four years. This appeal is from that judgment.

■ Appellant contends that the motion *to dismiss the indictment should* have been granted because the indictment was fatally defective in that the Act on which the indictment was based was referred to in the indictment as the "Selective Service Act of 1948," instead of the "Universal Military Training and Service Act." There is no merit in this contention. The Act on which the indictment was based has two names— "Selective Service Act of 1948" and "Universal Military Training and Service Act."[4] The name used in the indictment was a proper and sufficient designation of the Act.

■ Appellant contends that the motion for a judgment of acquittal at the close of the evidence offered by appellee should have been granted. We are not required to consider this contention, for appellant waived that motion by offering evidence after its denial.[5]

■ Appellant contends that the motion for a judgment of acquittal at the close of all the evidence should have been granted. That motion raised the

2. Section 12(a) of the Act, 50 U.S.C.A. Appendix, § 462(a), provides: "* * * any person * * * who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of [§§ 1–21 of the Act, 50 U.S.C.A.Appendix, §§ 451–454 and 455–471], or rules, regulations, or directions made pursuant to [said sections], * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *." See 62 Stat. 622.

3. Also called the Universal Military Training and Service Act.

4. As originally enacted—on June 24, 1948 —§ 1(a) of the Act, 50 U.S.C.A.Appendix, § 451(a), read as follows: "This Act may be cited as the 'Selective Service Act of 1948.'" See 62 Stat. 604. On June 19, 1951, it was amended to read as follows: "This Act may be cited as the 'Universal Military Training and Service Act.'" See 65 Stat. 75. The evidence showed that some of the things alleged in the indictment occurred between June 24, 1948, and June 19, 1951, and that some occurred after June 19, 1951.

5. Mosca v. United States, 9 Cir., 174 F. 2d 448; Lii v. United States, 9 Cir., 198 F.2d 109; Drown v. United States, 9 Cir., 198 F.2d 999.

question of the sufficiency of the evidence to sustain appellant's conviction. The evidence showed the following facts:

On October 26, 1949, and at all times thereafter, appellant was a male citizen of the United States residing in Los Angeles County, California. October 26, 1949, was his eighteenth birthday. Accordingly, on November 4, 1949, he registered as required by § 3 of the Act, 50 U.S.C.A.Appendix, § 453, as it then existed,[6] and regulations prescribed thereunder.[7] He thus became and was at all times thereafter a registrant under the jurisdiction of Local Board No. 113, a local board created and established in Los Angeles County under § 10(b)(3) of the Act, 50 U.S.C.A.Appendix, § 460(b) (3).[8] On October 26, 1950, the local board mailed him a classification questionnaire (SSS Form No. 100).[9] He received and completed the questionnaire and returned it to the local board on November 1, 1950. In it, he made the following statement:

"By reason of religious training and belief, I am conscientiously opposed to participation in war in any form and for this reason hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150)[10] which I am to complete and return to the local board for its consideration."

Accordingly, on November 1, 1950, the local board mailed him a special form (SSS Form No. 150). He received and completed the special form and returned it to the local board on November 6, 1950. In it, he made the following claim:

"I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training or service in the armed forces. I, therefore, claim exemption from combatant training and service and, if my claim is sustained, I understand that I will, because of my conscientious objection to noncombatant service in the armed forces, be deferred as provided in [§ 6(j) of the Act, 50 U.S. C.A.Appendix, § 456(j)]."[11]

6. See 62 Stat. 605.

7. See 32 C.F.R., 1949 Edition, § 1611.1. All sections of 32 C.F.R., 1949 Edition, cited in this opinion were in effect at all pertinent times prior to September 28, 1951.

8. Section 10(b) (3) of the Act, 50 U.S. C.A.Appendix, § 460(b) (3), provides: "* * * [The President] shall create and establish one or more local boards in each county * * * of each State * * *. Each local board shall consist of three or more members to be appointed by the President * * *. Such local boards * * * shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under [§§ 1–21 of the Act, 50 U.S.C.A. Appendix, §§ 451–454 and 455–471], of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, except when an appeal is authorized and is taken in ac-

cordance with such rules and regulations as the President may prescribe. There shall be not less than one appeal board located within the area of each Federal judicial district in the United States * * *." See 62 Stat. 619–620; 64 Stat. 1074; 65 Stat. 87. Prior to June 19, 1951, § 10(b) (3) of the Act, 50 U.S.C.A. Appendix, § 460(b) (3), provided that there should be at least one appeal board for each State. See 62 Stat. 620.

9. See 32 C.F.R., 1949 Edition, § 1621.9.

10. See 32 C.F.R., 1949 Edition, § 1621.11.

11. Section 6(j) of the Act, 50 U.S.C.A. Appendix, § 456(j), provides: "Nothing contained in [§§ 1–21 of the Act, 50 U.S.C.A.Appendix, §§ 451–454 and 455–471] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, so-

Thus appellant sought to be classified in Class IV–E, which is to say, he sought to be classified as a conscientious objector opposed to both combatant and noncombatant training and service.[12] However, instead of classifying him in Class IV–E, the local board, on November 15, 1950, classified him in Class I-A-O, which is to say, it classified him as a conscientious objector available for noncombatant service.[13] On November 21, 1950, it mailed him a notice (SSS Form No. 110)[14] stating that he had been classified in Class I-A-O. The notice further stated:

"Appeal from classification by local board must be made within 10 days after the mailing of this notice by filing a written notice of appeal with the local board.[15]

"Within the same 10-day period you may file a written request for personal appearance before the local board.[16] If this is done, the time in which you may appeal is extended to 10 days from the date of mailing of a new Notice of Classification after such personal appearance."[17]

Appellant did not appeal from his classification by the local board or request a personal appearance before the local board within the 10-day period specified in the notice or at all, nor did he at any time request the local board to reopen his classification.[18]

On March 8, 1951, the local board mailed him an order (SSS Form No. 223) to report for physical examination.[19] He complied with that order, was examined on March 16, 1951, and was found acceptable for induction. Thereafter, on July 16, 1952, the local board mailed him an order (SSS Form No. 252) to report for induction[20] on July 28, 1952. He received that order on July 18, 1952, but did not comply with it. Instead, on July 28, 1952, he knowingly failed and refused to be inducted.

Thus the evidence showed that appellant, on July 28, 1952, knowingly failed and refused to perform a duty required of him under §§ 1–21 of the Act, 50 U.S.C.A.Appendix, §§ 451–454 and 455–471, and regulations made pursuant thereto.[21] We therefore hold that the evidence was sufficient to sustain his conviction.

In the District Court, appellant urged as a defense that his classification in Class I-A-O was invalid. Thus appellant sought a judicial review of his classification. Having failed to appeal

---

ciological, or philosophical views or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under [said sections], be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in [§ 4(b) of the Act, 50 U.S.C.A. Appendix, § 454(b)] such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate * * *." See 62 Stat. 612–613; 65 Stat. 86. Prior to June 19, 1951, § 6(j) of the Act, 50 U.S.C.A.Appendix, § 456(j), provided that a person so found to be

conscientiously opposed to participation in such noncombatant service should be deferred. See 62 Stat. 613.

12. See 32 C.F.R., 1949 Edition, § 1622.20. On September 28, 1951, Class IV–E became Class I–O. See 32 C.F.R., 1951 Edition, § 1622.14. All sections of 32 C.F.R., 1949 Edition, cited in this opinion were in effect on September 28, 1951, and at all pertinent times thereafter.

13. See 32 C.F.R., 1949 Edition, § 1622.6; 32 C.F.R., 1951 Edition, § 1622.11.

14. See 32 C.F.R., 1949 Edition, § 1623.4.

15. See 32 C.F.R., 1949 Edition, § 1626.2.

16. See 32 C.F.R., 1949 Edition, § 1624.1.

17. See 32 C.F.R., 1949 Edition, § 1626.2.

18. See 32 C.F.R., 1949 and 1951 Editions, § 1625.2.

19. See 32 C.F.R., 1949 Edition, § 1628.11.

20. See 32 C.F.R., 1951 Edition, § 1632.1.

21. See 32 C.F.R., 1951 Edition, § 1632.14.

from his classification, he was not entitled to a judicial review thereof.[22]

At his trial in the District Court, appellant testified that he had a conversation with a clerk of the local board shortly after receiving notice of his classification. Appellant's counsel says that, in and by that conversation, appellant attempted to appeal from his classification and was frustrated by the clerk. As to what that conversation was, appellant testified as follows:

"Q. And what was the conversation? A. Well, I asked the clerk concerning the classification. I said that was not the classification that I filed for, that I deserved. She [the clerk] told me that inasmuch as the draft board[23] had classified me that, that they would not change their decision. * * *

"Q. Did you speak to her about an appeal? A. Yes.

"Q. What was the conversation on that? A. Well, as I already said before, she said as I had already been classified I-A-O, that the board wouldn't change their decision.

"Q. Did you ask her if there was anything you could do to get them to change the decision? A. Yes.

"Q. And what did she say? A. She said there wasn't."

Obviously, appellant did not, in or by that conversation, attempt to appeal from his classification, nor did the clerk, in or by that conversation, frustrate appellant; nor does the record show that appellant ever made any such attempt or was ever frustrated by the clerk or anyone else.

▆ Though not required to review appellant's classification, the District Court did review it to the extent of determining whether it had a basis in fact.[24] The District Court concluded that it did have a basis in fact. Appellant contends that it did not. Appellant having failed to appeal from his classification, we are not required to consider this contention. However, we have considered it and reject it for the following reasons:

As indicated above, appellant's claim was that, by reason of religious training and belief, he was conscientiously opposed (1) to participation in war in any form and (2) to participation in noncombatant training or service. On page 1 of his special form (SSS Form No. 150), he was asked to describe the nature of the belief which was the basis of his claim. He answered as follows: "I believe that it is wrong to kill (Romans 13:9), that it is wrong to fight with carnal weapons (2 Corinthians 10:3-5; Ephesians 6:12; Matthew 26:52) and participate in carnal warfare (John 18:36). Since these are the duties of Military Services, I can't join them. I also believe it is my duty to meet with the Church of Christ on the first day of the week. I believe that I should obey the Lord rather than man." He did not say that he believed it was wrong to participate in noncombatant training or service.

On page 2 of his special form, appellant was asked to explain how, when and from whom or from what source he received the training and acquired the belief which was the basis of his claim. He answered as follows: "By studying the Bible myself. From religious teaching in the Church of Christ, and from my mother's training at home, both from my earliest remembrance." He did not say that he had been taught in the Church of Christ or at home, by his mother or anyone else, that it was wrong

22. *Williams v. United States,* 9 Cir., 203 F.2d 85.

23. Meaning the local board.

24. Cf. *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; *Cox v. United States,* 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; *Tyrrell v. United States,* 9 Cir., 200 F.2d 8; *Dickinson v. United States,* 9 Cir., 203 F.2d 336; *Reed v. United States,* 9 Cir., 205 F.2d 216. It should be noted that the Estep, Cox, Tyrrell, Dickinson and Reed cases involved classifications from which appeals had been taken.

to participate in noncombatant training or service.

On page 3 of his special form, having stated that he was a member of the Church of Christ, appellant was asked to describe carefully the creed or official statements of that church in relation to participation in war. He answered as follows: "It is wrong to kill (Romans 13:9), it is wrong to fight with carnal weapons (2 Corinthians 10:3–5; Ephesians 6:12; Matthew 26:52), it is wrong to participate in carnal warfare (John 18:36)." He did not say that, according to the creed or official statements of the Church of Christ, it was wrong to participate in noncombatant training or service.

From the answers quoted above, the local board could reasonably find—as it did—that appellant was, by reason of religious training and belief, conscientiously opposed to participation in war in any form, but was not, by reason of religious training and belief, conscientiously opposed to participation in noncombatant training or service. There was, therefore, a basis in fact for his classification in Class I-A-O.

Judgment affirmed.

Biggs, Chief Judge, and Goodrich, Circuit Judge, dissented, and Staley, Circuit Judge, dissented in part.