**UNITED STATES of America**
**v.**
**Wilbur LeRoy RANSOM.**
**No. 11328.**

United States Court of Appeals
Seventh Circuit.
June 16, 1955.

Karl M. Milgrom, Chicago, Ill., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Robert Tieken, U. S. Atty., William T. Hart, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The defendant was indicted for violating the Universal Military Training and Service Act, 50 U.S.C.A. §§ 451–473, by refusing to perform civilian work prescribed by the Act for conscientious objectors. He was convicted in the lower court and sentenced to two years imprisonment.

The defendant was classified IV–E (conscientious objector) in 1951. This classification then required neither military nor civilian service. In 1952 the law as to conscientious objectors was changed, and defendant's classification was changed to I–O requiring him to perform civilian work contributing to the national interest. After notification of his I–O classification, defendant asked to appear before his local board. At this hearing the defendant told the board that since his first classification as a conscientious objector he had become associated with the religious sect known as Jehovah's Witnesses, and now considered himself a minister. He asked to be classified IV–D. The board refused his request, and, according to the defendant's uncontradicted testimony, said that Jehovah's Witnesses was not a recognized religion and that its members were not ministers.

Defendant appealed this decision, and his file, including several affidavits from members of his company of Jehovah's Witnesses stating that defendant was a minister, was sent to the state appeal board. The appeal board continued defendant in class I–O. Shortly after his file was returned to the local board, the defendant was appointed a "pioneer" minister of his church and he forwarded the letter so notifying him to the local board, and asked that his classification be reopened. The board refused to reopen, saying that this was not "new evidence." The defendant then appeared before the board in person, called attention to the new material in his file, told the members that he was spending 100 hours per month "preaching," and asked that they therefore reopen his classification. The board refused to do

so, and according to defendant's uncontradicted testimony in the criminal trial, one member of the board told the defendant that they believed everything he said but did not think those facts made him a minister.

Defendant next submitted a certificate from the Watch Tower Bible and Tract Society which stated that he had been appointed a "pioneer" minister and was required to spend 100 hours per month "preaching" from door to door and on street corners. He asked again that his classification be reopened and changed to IV–D. The board again refused.

In his final letter to the local board, the defendant told the board members that he had been appointed a "Territory Servant" and "Assistant to the Company Servant," and again asked them to reopen his file to investigate his right to a IV–D classification. The board refused and then ordered defendant to report for civilian work as a conscientious objector. Defendant refused and was indicted under the Act.

The defendant makes only two contentions in this court: (1) that he was denied due process of law when the local board refused his ministerial claim on the erroneous theory that Jehovah's Witnesses was not a recognized religion and its members were not ministers; and (2) that he was denied due process of law when the local board refused to open his case after he had presented new evidence making a prima facie case for a ministerial classification. We are reversing defendant's conviction on the strength of his second contention, and, thus, will limit our discussion to it.

The general picture presented is that of a conscientious objector who joined the church known as Jehovah's Witnesses, and thereafter became progressively more active and was given more and more responsibility. Both the local and the state appeal boards decided at an early period in their dealings with the defendant that he was not a minister, and then as evidence of more and more religious and ministerial activity was

presented, the local board refused to reopen his classification to consider such evidence and thereby prevented any further appeal. The local board's original determination was probably correct, but the question before us is whether or not it could constitutionally refuse to reconsider defendant's classification in the face of the defendant's subsequent allegations and the evidence tending to support them.

It has been firmly established by the Supreme Court that when a registrant makes a prima facie showing for a desired classification, the board may not deny him that classification unless it has a "basis in fact" for the denial. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Selective Service System regulations recognize that "no classification is permanent" (32 C.F.R. § 1625.1), and empower the local board to "reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, * * * in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * *." (32 C.F.R. § 1625.2) We think that the rule requiring a basis in fact for the action of the board in making the original classification, as announced in Dickinson and Estep is equally applicable to the action of the board in determining whether or not changed conditions justify a reopening of the registrant's classification and consideration of his claim to a different classification. The local board should not be able to escape the requirement of a basis in fact by simply refusing to reopen a registrant's file and consider it further. If a registrant makes a prima facie showing of right to a new classification, the board cannot refuse to give it to him unless it has at least a basis in fact for that refusal. We regard this as a necessary corollary to, if not the

same as, the rule laid down in the Estep and Dickinson cases, supra.

If a registrant presents a prima facie case for a new classification, the mere fact that his file has previously been closed is not a basis in fact for refusing the requested classification. When such a prima facie case is presented and the board has no basis for refusing the requested classification, it must investigate further. If further investigation fails to disclose any basis for refusing the registrant's requested classification, it must be granted.

Having before us the proposition that review for a basis in fact applies to a change in classification as well as an original classification, we have two questions to answer: (1) Did Ransom make out a prima facie case for a ministerial classification, and (2) if so, did the local board have a basis in fact for denying it?

We cannot validly distinguish for draft purposes between ministers of Jehovah's Witnesses who preach from door to door and on street corners as their vocations, and ministers of more conventional faiths who preach in pulpits, teach in church schools or carry on various other religious activities for their churches. See Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 891, 87 L.Ed. 1292; and United States v. Balogh, 2 Cir., 157 F. 2d 939. A holding that only leaders of organized congregations are exempt as ministers would deny exemption to many regularly ordained ministers who spend their lives teaching and performing various other functions for their churches.

We feel that Ransom did present a prima facie case for a IV-D classification. After the local and appeal boards refused to change his classification, he submitted documentary evidence that he had been appointed a "pioneer" minister required to spend at least 100 hours per month preaching from door to door. He testified before the local board that he was spending at least 100 hours per month preaching, and that his only secular activity was about one day per week spent working on his parents' farm for his board and room. Defendant later told the board by letter that he had been appointed a "Territory Servant" and was "Assistant to the Company Servant." This apparently meant that he had certain administrative duties within his group of Witnesses and helped preside at their religious meetings in addition to his 100 hours per month spent preaching from door to door. Besides this evidence, Ransom's file already contained six affidavits from his fellow Witnesses swearing that he was an ordained minister in their church and was actively discharging his ministerial duties.

The facts in this case clearly distinguish it from United States v. Diercks, 7 Cir., 223 F.2d 12, which was recently decided by this court. The defendant Diercks was also certified as a "pioneer" minister but he did not show that he was *actually* spending at least 100 hours per month preaching. Diercks had a full time position as an insurance salesman, continued in that position and did not show any reduction in the time he was spending in that secular employment.

We find nothing in the record that would justify the board in refusing to believe the evidence presented by defendant, nor is there anything tending to counteract the effect of that evidence. According to defendant's uncontradicted testimony in the court below, the local board said: "We believe you. We don't doubt but what you are spending your full time preaching. We just don't think you are a minister." It is obvious that the local board did not investigate to see whether or not there was any basis in fact for denying defendant's claim because it did not think he had made a prima facie case.

It sometimes happens that even when a registrant has alleged facts which, if true, would entitle him to the requested classification, further investigation may not be necessary because a basis for denying the classification may appear on the face of his evidence or in the manner of its presentation. De Moss v. United States, 8 Cir., 218 F.2d 119; United States v. Hill, 7 Cir., 221 F.2d 437. But

such was not the case here. Ransom was prompt in notifying the board as his activities in Jehovah's Witnesses increased. His letters and his testimony were straightforward and sincere, and the board insisted that it believed what he said.

The defendant presented a prima facie case to his draft board for a IV–D classification, and the board not only had no basis in fact for denying that classification, but admitted as much. The board, therefore, improperly refused to reopen and consider anew his classification.

The judgment is

Reversed.