**Gene WOO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19354.**

United States Court of Appeals
Ninth Circuit.

Sept. 27, 1965.

Clark A. Barrett, San Francisco, Cal.,
for appellant.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., Beatrice Rosenberg, Julia P.
Cooper, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before BARNES, HAMLEY and
KOELSCH, Circuit Judges.

BARNES, Circuit Judge.

Appellant was charged and adjudged
guilty in the district court with failing
to submit himself for induction, and to
be inducted, after being classified as
Class I-A and being ordered inducted
under the terms of the "Universal Military Training and Service Act." (50
U.S.C.App. § 462(a).) Jurisdiction below rested upon 18 U.S.C. § 3231. It
rests here upon 28 U.S.C. §§ 1291 and
1294.

When appellant first registered for
selective service, he claimed no exemption as a minister or student preparing
for the ministry. He first asserted a
claim as a conscientious objector after

he was notified of his I-A classification. Three years later, having requested a conscientious objector form (Form SSS 150), but never having returned it, he failed to appeal or request a personal appearance before the Board (although advised by the Board he could do either) after notice of his I-A reclassification.

He later requested a second conscientious objector's form and returned it with certain information.[1] He again was classified as I-A by the Board, was notified of it and failed to appeal or request a personal appearance. He was then ordered to report for a physical examination, did so, and was accepted for military service. He then again requested an SSS Form 150, and returned it with certain information.[2]

We note that of the twelve factual statements in the second Form 150 filed February 23, 1962, nine were the same as, or very similar to, nine facts alleged in the first Form 150 filed with the Board August 14, 1961. The additional facts added by the second form were:

(1) That appellant had rejected four opportunities to work for highway agencies;

(2) that appellant had changed his "hope" of going back to Hong Kong to marry and to buy a house;

(3) that the religious sect of appellant's parents was Buddhism.

Appellant also elaborated somewhat upon his belief to say he desired "to gain more knowledge of Jehovah, to become perfect, and thus to be accepted in the new world."

The government brief points out several matters that cast doubt on the inferences appellant requests us to draw as to his sincerity, and demonstrates an absolute failure on his part to exhaust his administrative remedies, and a determination to completely disregard them.

Appellant testified at trial that he still had the first Form SSS 150 which

---

1. "Therein appellant stated that he was opposed to participation in combatant and non-combatant service. He stated that his belief stemmed from a study of the Bible with two friends beginning in 1959; that he looked to Jehovah's Witnesses for religious guidance; that he would use force only if without a way to avoid attack and then he would strike back in defense; that he demonstrated his conviction by service on weekends and rejecting opportunities to work at research and public resource centers; that he was planning to be a minister; that he was baptized in 1960; that his teachings were that the world was controlled by the devil, that whoever loved the world was an enemy of God, and that he therefore would not give service to any nation; and that his duties were to tell the people of a new world coming to earth at which time all nations would be destroyed. Describing the official creed of Jehovah's Witnesses he said, 'We wouldn't help any nation even when fighting was in front of us.' In furnishing general background information he listed attendance at City College of San Francisco, and employment as a painter, farmer and dishwasher. He stated that his parents were living but did not fill in the space opposite a query relative to their religious sect." (Gov. Brief, p. 4. Record references omitted.)

2. "Therein appellant stated again that he looked to Jehovah's Witnesses for religious guidance; that his belief stemmed from the study of the Bible with two friends beginning in 1959; that he would use force or strike for defense only if there were no way to get away; that he was baptized on March 7, 1960; and that he had rejected four opportunities to work for highway agencies. He again recited teachings that whoever was a friend of the world was an enemy of God and that his duty was to tell people of the kingdom in the near future. He elaborated upon his belief to say that the desire to gain more knowledge of Jehovah, to become perfect, and thus to be accepted in the new world, had changed his hope of going back to Hong Kong to marry and to buy a house. He again described the organizational creed of Jehovah's Witnesses as one involving neutrality. He gave essentially the same background information as before but this time indicated the religious sect of his parents to be Buddism (sic)." (Gov. Brief, pp. 5-6. Record references omitted.)

he had requested. Asked why he requested a second form, he said, "I forgot. I don't know. I know I received—I received three forms." He recalled receiving a card in May 1961 advising him of his I-A classification, but said he did not understand what "appeal" meant until two days later and that he still did not know how to write a letter and put the word "appeal" in a sentence. He admitted that, prior to 1961, when he filled out the second conscientious objector form, he had had one and one-half years of college (using English textbooks) in the San Francisco area.

Appellant testified that he did not appeal the September 1961 classification because he thought it of no use in that he did not receive the notification until more than ten days after he was officially classified. He testified that when he reported for physical examination he had no conversation with anyone concerning his objections to military service. He never went to the draft board or talked to anyone in selective service about appealing his classification.

(In connection with the question of appellant's sincerity, as it relates to the validity of the local board's classification decision, see Judge Duniway's opinion in Greiff v. United States, 9 Cir., decided July 21, 1965, 348 F.2d 914, and particularly the cases cited in the last paragraph.)

The Selective Service Board then reviewed appellant's case, and voted not to reopen the question of classification.

Two questions arise under these facts: (1) is appellant entitled as a matter of right to have his case reopened; or (2) is appellant entitled to assert the defense of "wrongful classification" at his trial to justify his previous refusal to be inducted?

We think a portion of the opinion of the court below ably discusses the appellant's issues. There it was said:

"[T]he draft law * * * exempts from compulsory military service any person 'who, by reason of religious training and belief, is con-scientiously opposed to participation in war in any form'. 50 U.S.C. App. 456(j). Conformably the selective service regulations (1622.2) have provided for those claiming status as conscientious objectors, classifications of I-A-O (conscientious objector available for non-combatant military service only), and of I-O (conscientious objector available for civilian work contribution to the maintenance of the national health, safety or interest). A registrant who claims such status and is nevertheless classified I-A (available for military service) by the local board, has the right to request a personal appearance before the local board for reconsideration of the classification (Sec. 1624.1) and the right to appeal to the selective service appeal board (Sec. 1626.-1, et seq.). If the registrant's claim of conscientious objection to military service is not sustained on preliminary review by the appeal board, the file is referred to the United States Attorney for investigation and hearing in the Department of Justice on the merits of the claim (Sec. 1626.-25). Thereafter, and in the light of the information so obtained, the registrant's classification is again reviewed by the appeal board and a decision is made.

The regulations also provide for a possible reopening of a registrant's classification by the local board in its discretion upon the written request of the registrant. (Sec. 1625.-2.)

A claim of conscientious objection presents a difficult factual determination of the subjective sincerity of the claim and of whether it arises from religious training and belief.

The anomaly in the entire situation exists because regardless of the extent to which the administrative procedures have been utilized, there can be no stronger proof of the sincerity of the registrant's objections than his willingness to subject

himself to a possible five year penitentiary sentence for draft evasion rather than to submit to compulsory service after his claim of exempt status has been rejected. Whether the objections are generated from religious training or belief remains an open question.

Nevertheless, the Government, while giving every consideration to those whose conscientious objections to military service are sincerely based on religious training and belief, cannot permit such a claim to be an escape hatch from the draft for citizens whose objections to service are spuriously asserted to be religiously dictated. The Government can do no more than afford adequate prosedural machinery for a fair determination, within the limitations of man's ability, of the integrity of the claim to exemption.

■ The defendant, Gene Woo, did not utilize his administrative remedies. He did not request a personal appearance before the local board or appeal after being classified I-A on September 18, 1961. He is not entitled to judicial review of such classification. Kaline v. United States, 235 F.2d 54 (9th Cir. 1956); Williams v. United States, 203 F.2d 85 (9th Cir. 1953); Rowland v. United States, 207 F.2d 621 (9th Cir. 1953); United States v. Grizzard, 223 F.Supp. 890 (S.D. Cal.1963).

But, says defendant, in February, 1962, I requested a reopening of my case and a reconsideration of my classification under Section 1625.2 of the regulations, and the local board acted arbitrarily and unreasonably in refusing to reopen the case. Defendant contends that there was no basis in fact for the local board's refusal to reopen the case and reconsider the classification because all the evidence before the board (the two SSS 150 forms) was consistent only with the claim of exempt status. Cf. Peter v. United States, 324 F.2d 173 (9th Cir. 1963); United States v. Vincelli, 215 F.2d 210, 216 F.2d 681 (2d Cir. 1954); Olvera v. United States, 223 F.2d 880 (5th Cir. 1955); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955).

This is not a case where the registrant had presented new facts to the board for the first time in support of his prayer for reopening. His February, 1962, conscientious objector form was not different in substance from that filed and considered by the board in August, 1961. The sole and only reason the evidence before the board was all one way is that defendant wilfully refused or neglected to avail himself of the elaborate safeguards established by the regulations for determining the sincerity of his claims and their emanation from religious training and belief. Defendant wilfully refused or neglected to appeal the I-A classification or to request a personal appearance before the local board in September, 1961." (Clk's Tr. 11–13.)

■ The district judge then states:

"We hold that a local board does not act arbitrarily and unreasonably in refusing to reconsider a claim of exempt status by a conscientious objector when the same claim has previously been considered and rejected and the registrant has not invoked the administrative remedies which would have brought about a thorough investigation and hearing of all aspects of his claim. Cf. Boyd v. United States (9 CCA 1959), 269 F.2d 607; Badger v. United States (9 CCA 1963), 322 F.2d 902; Smith v. United States (4 CCA 1946), 157 F.2d 176; United States v. Blankenship (S.D.W.Va.1954), 127 F.Supp. 760; United States v. Messerman (M.D.Pa.1955), 128 F.Supp. 759. To hold otherwise would create a shambles of this area of selective service classification. Simply by refusing or neglecting to invoke the

administrative machinery for thorough investigation, such a registrant could always create a one-sided record before the board which would enable him to require reconsideration whenever induction became imminent. The failure of defendant to request a personal appearance before the local board or to appeal his I-A classification is itself evidence which the board may consider on request for reopening and reclassification and which impugns the integrity of defendant's claim to exempt status." (Clk's Tr. 13.)

We agree. The evidence supports the findings and the judgment.

Affirmed.

HAMLEY, Circuit Judge (dissenting):

In order to convict Gene Woo of wilfully failing to report for induction into the armed forces, it was necessary for the United States to establish, as alleged in the indictment, that he had theretofore been duly classified in Class I-A. Woo defended on the ground that he was not duly so classified. He asserted, in effect, that the facts alleged in each of his three conscientious objector forms established, prima facie, that he was entitled to a different classification, and that these asserted facts are not countered by any evidence in the record.

Insofar as this defense constitutes an attack upon the order of the local board, entered May 1, 1961, and subsequent orders, classifying him as I-A, it is an unavailable defense, since Woo did not administratively appeal from those orders. See Greiff v. United States, 9 Cir., 348 F.2d 914, decided July 21, 1965; Badger v. United States, 322 F.2d 902, 906 (9th Cir. 1963).

But Woo's second and third conscientious objector forms were also, in effect, written requests, made pursuant to 32 C.F.R. § 1625.4, to reopen and consider anew the registrant's classification. They were so treated by the local board.

Where such a request is made, the local board "may" reopen and consider anew the classification. See 32 C.F.R. § 1625.2. This regulatory provision, however, is subject to the exception that the local board "shall not" reopen the classification, if (1) the local board is of the opinion that the information accompanying such request fails to present "any" facts in addition to those considered when the registrant was classified or, (2) even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification. 32 C.F.R. § 1625.4.

The local board declined to reopen and consider anew Woo's classification. Since, as the majority opinion itself notes, the written request to reopen did contain *some* facts in addition to those considered when the first classification order was entered, the local board was not forbidden under the first category of 32 C.F.R. § 1625.4 referred to above, from reopening the matter. The question remains, however, whether the local board was so prohibited, under the indicated second category of 32 C.F.R. § 1625.4, because (presumably) even though new facts were submitted, the local board was of the opinion that such facts, if true, would not justify a change in such registrant's classification. Additionally, if not prohibited from reopening the classification on this ground, there is the question whether the local board could, in its discretion, decline to reopen.

There is no administrative review of a local board determination that a classification matter should not be reopened. Boyd v. United States, 269 F.2d 607, 611 (9th Cir. 1959); Klubnikin v. United States, 227 F.2d 87, 90 (9th Cir. 1955). It follows that our consideration of questions concerning failure to reopen is not thwarted by Woo's failure to appeal, administratively, from the order denying the request to reopen.

Refusal of a local board to reopen on the ground that the newly-asserted facts would not justify a change in classification may be set aside if such refusal has no basis in fact. See United States v. Ransom, 223 F.2d 15, 17, 19 (7th Cir.

1955). As indicated in that decision, refusal to reopen has no basis in fact if the written request to reopen sets forth a prima facie case for reclassification and if it contains some allegations of fact in addition to those considered when the registrant was originally classified. The court stated, in Ransom, at page 18:

"If a registrant presents a prima facie case for a new classification, the mere fact that his file has previously been closed is not a basis in fact for refusing the requested classification. When such a prima facie case is presented and the board has no basis for refusing the requested classification, it must investigate further. If further investigation fails to disclose any basis for refusing the registrant's requested classification, it must be granted."

In my opinion Woo's written requests for reopening, which allege some facts in addition to those originally considered by the local board, each presented a prima facie case for classification as a conscientious objector. I do not understand that the trial judge held otherwise, or that the majority on this appeal has a contrary view as to this.

Had the case been reopened, it would have been incumbent upon Woo to come forward with evidence supporting his allegations. However, he was not given that opportunity. The administrative record contains no evidence, nor even any official allegations, tending to rebut Woo's prima facie case. Under the principle stated in Ransom, therefore, the local board acted without a basis in fact in denying the request to reopen. It follows that Woo was not, at the time of his failure to submit himself for induction, duly classified in Class I-A. His motion for judgment of acquittal should therefore have been granted, and failure to do so is, in my opinion, reversible error.

The district court and the majority on this appeal seem to find significance in the fact that Woo did not proceed promptly in filing a conscientious objector form. He was classified I-A on May 1, 1961, and did not file a conscientious objector form until August 14, 1961.

This, however, was the date on which the form was required to be filed in order to be timely, according to a statement on the first page of the form. Moreover, that form was filed more than seventeen months before the local board ordered Woo to report for induction. The form was therefore not belated in a legal sense. This being true, I do not believe the local board was entitled to suspect the registrant's sincerity because of the delay in filing the form. Indeed, there is nothing in the record to indicate that the local board acted on the basis of such a suspicion.

The district court and the majority on this appeal also seem to find significance in the fact that Woo did not seek a personal appearance before the local board. The regulations do not require a registrant to voluntarily appear before a local board in order to obtain consideration of an application on its merits. Had the local board desired his appearance it could have, but did not, request it. Moreover, there is nothing in the administrative record to indicate that the local board attached any significance to the fact that Woo did not request a personal appearance.

I would reverse.